UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| LAURIE ANN DeVORE, ) | |
| ) | |
| Plaintiff, ) | Case No. 5:22-cv-00186-GFVT-EBA |
| ) | |
| v. ) | |
| ) | **OPINION** |
| UNIVERSITY OF KENTUCKY BOARD ) | **&** |
| OF TRUSTEES, ) | **ORDER** |
| ) | |
| Defendant. ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Plaintiff Laurie DeVore told her employer, the University of Kentucky, that she had a religious objection to its requirement that she either receive a COVID vaccine or submit to COVID testing. [R. 19-8.] Instead, she suggested that the University should let her work remotely or hire an additional staff member. [R. 31.] However, her objection was not based on a religious belief. And even if it was, the University could not accommodate her beliefs without suffering an undue hardship. Accordingly, Ms. DeVore's motion for summary judgment [R. 19] is **DENIED** and the University's cross motion [R. 22] is **GRANTED**.

I

In 2014, Ms. DeVore began working in the Office for Policy Studies on Violence Against Women, a department within the University's College of Arts & Sciences that focused on helping graduate students with research development. [R. 22-2 at 14.] The Office consisted of a director, a department manager, and a part-time researcher. *Id.* at 9-10. As the Office's department manager, Ms. DeVore was primarily responsible for clerical and logistical support. [R. 24-1 at 5.]

As the all too familiar story goes, COVID forced a change in March of 2020. [R. 19-5 at 11.] The University mandated remote work due to safety concerns. *Id.* About a year and a half later, the University advised that all advisors and department managers must return to work in person. [R. 19-7.] The University also took safety precautions to facilitate in-person work. It required weekly COVID testing for all unvaccinated faculty, staff, and students. [R. 19-8 at 1.] If someone received a vaccine, they would no longer be required to submit to testing. *Id.* However, the University required employees to wear facemasks regardless of their vaccination status. [R. 19-9 at 3.]

Those who did not get a COVID vaccine or submit to testing were disciplined. If an employee did not comply, the University could place a letter in the employee's record, reduce their pay, put the employee on unpaid leave, or terminate their employment. *Id.* at 2. Ms. DeVore fell out of compliance with the University's COVID requirements. [*See, e.g.*, R. 22-30 (notices of non-compliance).] She requested an exemption from the policy, but the University denied her request. [R. 22-9 at 2-3.] The University placed Ms. DeVore on unpaid administrative leave after her fourth period of noncompliance. [R. 19-23 at 4.] Then, faced with the threat that the University would fire her for violating the policy, Ms. DeVore voluntarily retired. [R. 19-24.]

Ms. DeVore now brings this action against the University for failing to accommodate her religious beliefs. [R. 1.] She alleges that her sincerely held religious beliefs prevented her from taking the COVID vaccine or submit to testing, and the University failed to reasonably accommodate this conflict. *Id.*

## II

Summary judgment is appropriate when "the pleadings, discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). The moving party has the initial burden of demonstrating the basis for its motion and identifying those parts of the record that establish the absence of a genuine issue of material fact. *See Chao v. Hall Holding Co.*, 285 F.3d 415, 424 (6th Cir. 2002). The movant satisfies its burden by showing "that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986).

Once the movant satisfies this burden, the non-moving party must present specific facts to demonstrate that there is a genuine issue of a material fact. *Hall Holding*, 285 F.3d at 424 (citing *Celotex Corp.*, 477 U.S. at 324). The party must "direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *Poss v. Morris (In re Morris)*, 260 F.3d 654, 665 (6th Cir. 2001) (internal quotations omitted). The Court then must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1310 (6th Cir. 1989) (quoting *Anderson*, 477 U.S. at 251-52). When reviewing cross-motions for summary judgment, "the court must evaluate each motion on its own merits and view all facts and inferences in the light most favorable to the nonmoving party." *Wiley v. United States*, 20 F.3d 222, 224 (6th Cir. 1994) (citing *Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991)).

Ms. DeVore alleges that the University failed to accommodate her religious beliefs in violation of both federal and state law. [R. 1 at 2.] A plaintiff must prove the same elements for a discrimination claim under either Title VII or the Kentucky Civil Rights Act. *See Bd. of Regents v. Weickgenannt*, 485 S.W.3d 299, 306 n.6 (Ky. 2016). Indeed, Kentucky enacted the KCRA to implement federal religious protections. *Louisville & Jefferson Cnty. Metro. Sewer Dist. v. Hill*, 607 S.W.3d 549, 555 (Ky. 2020). Therefore, the Court will not separate the analyses for Ms. DeVore's religious accommodation claims.

Any religious accommodation case "begins with the question of whether the employee has established a prima facie case of religious discrimination." *Tepper v. Potter*, 505 F.3d 508, 514 (6th Cir. 2007) (quoting *Smith v. Pyro Mining Co.*, 827 F.2d 1081, 1085 (6th Cir. 1987)). Once an employee has established a prima facie case, the employer has the burden to show that this could not reasonably accommodate the employee without undue hardship. *Virts v. Consol. Freightways Corp.*, 285 F.3d 508, 516 (6th Cir. 2002). Here, Ms. DeVore fails to show a prima facie case of discrimination. And even if she can show a prima facie case, the University shows that her requested accommodation would cause it undue hardship.

**A**

To establish a prima facie case, a plaintiff must show that (1) she holds a sincere religious belief that conflicts with an employment requirement, (2) she has informed the employer about the conflict, and (3) she was discharged or disciplined for failing to comply with the conflicting employment requirement. *Tepper*, 505 F.3d at 514. The University does not dispute that Ms. DeVore informed it about her concerns with the University's COVID policy or that it discharged her for failing to comply with the policy. [R. 22 at 14.] The University argues that Ms. DeVore

4

does not establish a prima facie case because Ms. DeVore's objection to COVID testing is not religious.[1] *Id.* at 14-15.

Ms. DeVore claims that she holds a religious belief that conflicts with the University's COVID testing requirement because "it would be an affront to God for her to involuntarily subject herself to medical testing without informed consent." [R. 24 at 4.] Essentially, Ms. DeVore submits that a COVID testing policy conflicts with her religious beliefs because the policy uses coercion in two ways: it forces her to take the COVID vaccine and it takes away her ability "to choose what shall or shall not happen to my person." [R. 22-20 at 4.]

**1**

First, Ms. DeVore objects to the University's COVID policy because she believes that the University uses testing to "manipulate [her] into taking the 'vaccine,'" which is harmful. *Id.* She alleges that the University manipulates her into taking the vaccine by using the prospect of weekly testing as a penalty for not taking the vaccine. [R. 19-19 at 1.]

This fails to show a religious conflict with a work requirement. Ms. DeVore may have believed that the University was manipulating her to take the vaccine, but it was not. Like in *Egelkrout v. Aspirus*, it is undisputed that the University did not mandate employees to get vaccinated against COVID because it allowed employees to test instead. No. 22-cv-118-bbc, 2022 U.S. Dist. LEXIS 128519, at *9 (W.D. Wis. July 20, 2022); [R. 1 at 4.] Indeed, the University required employees *either* to get vaccinated or submit to testing. And Ms. DeVore

---

[1] Initially, Ms. DeVore objected to the University's testing policy in part because the University intended to conduct testing by nasal swab. Ms. DeVore argued that the nasal swab test conflicted with her religious beliefs because it is "invasive" and "can damage the first line of defense God created mankind with and could provoke immediate or long-term health issues." [*See, e.g.*, R. 22-20 at 4.] Even if this is a religious belief, Ms. DeVore does not show that this objection conflicted with an employment requirement. The University offered Ms. DeVore the options to submit COVID tests conducted by oral swab or saliva submission. [R. 22-24 at 2.] Ms. DeVore later testified that she believed "[t]here was no invasiveness regarding the saliva test." [R. 22-1 at 5.] Therefore, by not articulating an objection to the oral swab or saliva methods, Ms. DeVore fails to show that she held a religious belief that conflicts with the particular method of COVID testing.

did not face any adverse action for not getting vaccinated. Ms. DeVore may—and does—separately object to COVID testing, but the University offered a true choice between vaccination or testing. Because Ms. DeVore does not show that the University required vaccination in practice, she does not show that the option to receive a vaccination conflicts with her religious beliefs.

**2**

Second, Ms. DeVore objects to COVID testing because "mandatory testing violates established precepts that are upheld in the laws of our nation and my God-given rights to be able to choose what shall or shall not happen to my person." [R. 22-20 at 4.] Said another way, Ms. DeVore objects to COVID testing because it "goes against justice, righteousness, [and] all that is honorable and true, therefore it goes against all that God is and how He would have me live." *Id.* Ms. DeVore does not specify how COVID testing goes against her religious beliefs in justice or righteousness. Thus, she argues only that University policy conflicts with her religious beliefs by requiring her to do something that she would not otherwise do. This is not a conflict with a religious belief.

For a plaintiff to hold a sincere religious belief that conflicts with an employment requirement, she must "show that it was the religious aspect of her conduct that motivated her employer's actions." *Lawhead v. Brookwood Mgmt. Co., LLC*, No. 5:22-cv-00886-JRA, 2023 U.S. Dist. LEXIS 54355, at *7 (N.D. Ohio Mar. 29, 2023) (quoting *Pedreira v. Ky. Baptist Homes for Child., Inc.*, 579 F.3d 722, 728 (6th Cir. 2009)); *see also Holt v. Hobbs*, 574 U.S. 352, 360 (2015) (holding that a "request for an accommodation must be sincerely based on a religious belief and not some other motivation"). Though courts should not inquire into validity or plausibility of a belief, court should decide whether the beliefs are truly held and whether they

6

are religious. *Id.* Courts differentiate between views that are religious in nature from those views that are "essentially political, sociological, or philosophical." *Fallon v. Mercy Catholic Med. Ctr.*, 877 F.3d 487, 490 (3d Cir. 2017) (quoting *United States v. Seeger*, 380 U.S. 163, 165 (1965)). Moreover, "the very concept of ordered liberty" precludes courts from granting a person "a blanket privilege 'to make his own standards on matters of conduct in which society as a whole has important interest.'" *Africa v. Pennsylvania*, 662 F.2d 1025, 1031 (3d Cir. 1981) (quoting *Wisconsin v. Yoder*, 406 U.S. 205, 215-16 (1972)). Allowing such a privilege would turn the First Amendment into "a limitless excuse for avoiding all unwanted legal obligations." *Id.* at 1030.

The facts in *Finkbeiner v. Geisinger Clinic* are nearly identical to those here. 623 F. Supp. 3d 458, 465 (M.D. Pa. 2022). In *Finkbeiner*, an employer required employees to be vaccinated for COVID or to submit to regular testing. 623 F. Supp. 3d at 463. The plaintiff asserted that she held a conflicting religious belief because she had "a God given right to make [her] own choices regarding what is good or bad" for her. *Id.* The court held that the plaintiff's objection was not religious. *Id.* at 465-66. Rather, the plaintiff's asserted right to make her own choices was merely an "isolated moral teaching" that would amount to a limitless excuse for avoiding all unwanted obligations. *Id.* (internal quotation marks omitted). Indeed, her asserted right to make her own choices only furthered her purely medical objections to COVID vaccines and testing. *Id.* at 466.

Courts agree that similarly broad objections do not constitute protected religious beliefs. *See, e.g.*, *Friend v. Astrazeneca Pharm. LP*, No. SAG-22-03308, 2023 U.S. Dist. LEXIS 83749, at *7-8 (D. Md. May 11, 2023) (holding that assertions that "are little more than a declaration that Plaintiff has the right to make his own decisions[] do not constitute religious beliefs, even

7

where religion is more expressly invoked"); *Fallon v. Mercy Cath. Med. Ctr. of Se. Pa.*, 200 F. Supp. 3d 553, 560-61 (E.D. Pa. 2016), *aff'd*, 877 F.3d 487 (3d Cir. 2017) (holding that a plaintiff's assertion that consenting to vaccination would violate his conscience about right and wrong was not a religious objection); *Ellison v. Inova Health Care Servs.*, No. 1:23-cv-00132 (MSN/LRV), 2023 U.S. Dist. LEXIS 124861, at *11 (E.D. Va. July 19, 2023) (holding that the plaintiff's belief that a COVID vaccine would be "antithetical to [his] desire to honor God" was not a religious objection).

Here, Ms. DeVore claims a religious belief that she must be "able to choose what shall or shall not happen" to her and must live as God "would have [her] live." [R. 22-20 at 4.] Simply, this seeks a religious objection to any requirement with which she disagrees. This is not a religious belief but rather an isolated moral teaching. *See Finkbeiner*, 623 F. Supp. 3d at 465-66. Granting Ms. DeVore's request would amount to a blanket privilege and a limitless exclude for avoiding all unwanted obligations. *See Finkbeiner*, 623 F. Supp. 3d at 463. And such a blanket privilege would denigrate "the very concept of ordered liberty." *Africa*, 662 F.2d at 1031. Therefore, Ms. DeVore fails to establish a prima facie religious accommodation claim because she does not show that she holds a religious belief that conflicts with an employment requirement. *Tepper*, 505 F.3d at 514.

### B

Ms. DeVore's claims also fail because the University shows that it cannot accommodate her beliefs without suffering an undue hardship. Once an employee has established a prima facie case of discrimination, the burden shifts to the employer to show that the religious practice would cause an "undue hardship on the conduct of the employer's business." 42 U.S.C.S. § 2000e(j); *Virts*, 285 F.3d at 516. Title VII requires an employer to reasonably accommodate

8

religious beliefs, not merely assess the reasonableness of an accommodation that an employee proffers. *Groff v. DeJoy*, 143 S. Ct. 2279, 2296 (2023). Accordingly, the University must show that any accommodation of Ms. DeVore's religious beliefs would have imposed an undue hardship.[2] *See Adeyeye*, 721 F.3d at 455. The University meets this burden.

For nearly 50 years, *Hardison* guided the undue hardship inquiry. In *Hardison*, the plaintiff was hired to a department that provided spare parts needed to repair and maintain aircraft. *Hardison v. Trans World Airlines*, 375 F. Supp. 877, 889 (W.D. Mo. 1974). As part of his religion, the plaintiff sought to refrain from working from sunset on Fridays until sunset on Saturdays. *Trans World Airlines v. Hardison*, 432 U.S. 63, 67 (1977). However, the employer had a seniority system where the most senior employees had first choice for shift assignments. *Id.* The plaintiff did not have sufficient seniority to have Saturdays off. *Id.* at 68. The Supreme Court held that "to bear more than a de minimis cost" is an undue hardship. *Id.* at 84. And because not enough co-workers were willing to take the plaintiff's shift voluntarily, the employer would have to compel them to do so or leave the department short-handed and adversely affect its mission. *Groff*, 143 S. Ct. at 2291 (citing *Hardison*, 432 U.S. at 68, 80). The Court determined that these options amounted to an undue hardship. *Id.*

Since *Hardison*, lower courts generally have held that an undue hardship was anything more than a de minimis cost. *See, e.g.*, *Creusere v. Bd. of Educ. of the Ct.y Sch. Dist. of Cincinnati*, 88 Fed. App'x 813, 819 (6th Cir. 2003) ("[A]n undue burden or undue hardship is defined as more than a *de minimis* cost to the employer."). Under this standard, the Sixth Circuit

---

[2] The University suggests at times that it offered Ms. DeVore a reasonable accommodation by inviting her to apply to a different position with the University that allowed remote work. [*See* R. 27 at 5.] But Title VII "does not contemplate asking employees to sacrifice their jobs to observe their religious practices." *Adeyeye v. Heartland Sweeteners, LLC*, 721 F.3d 444, 456 (7th Cir. 2013) (holding that an option of voluntary termination with the right to ask for one's old job later is not a reasonable accommodation).

9

has determined an undue hardship was met by: The prospect of paying overtime wages. *See id.* The hiring of an additional worker or risking the loss of production. *See Cooper v. Oak Rubber Co.*, 15 F.3d 1375, 1380 (6th Cir. 1994). And the "mere possibility of an adverse impact on co-workers." *Virts*, 285 F.3d at 520 (quoting *Weber v. Roadway Express, Inc.*, 199 F.3d 270, 274 (5th Cir. 2000)).

The lower courts' interpretation of *Hardison*, however, was inconsistent with the text of Title VII. So, the Supreme Court returned to the original public meaning of undue hardship in *Groff v. DeJoy*. 143 S. Ct. 2279 (2023). To return to the meaning of undue hardship, the Court defined the terms. It noted that the common meaning of "hardship" was, "at a minimum, 'something hard to bear'" around the time that Congress enacted Title VII. *Id.* at 2294 (quoting Random House Dictionary of the English Language 646 (1966) (Random House)). A hardship was thus "more than a mere burden." *Id.* The modifier "undue" indicates that the requisite burden "must rise to an 'excessive' or 'unjustifiable' level." *Id.* (citing Random House 1547). On the other hand, de minimis describes something only "very small or trifling." *Id.* at 2295. (internal quotation omitted). Therefore, the Court held that showing "more than a de minimis cost" does not establish an undue hardship. *Id.* at 2294.

The court instead provided that an employer can show an undue hardship by showing that an accommodation would substantially burden the employer's overall business. *Id.* When determining whether an accommodation would impose a substantial burden, courts should consider "all relevant factors," including "the particular accommodations at issue and their practical impact in light of the nature, size, and operating cost of an employer." *Id.* at 2295 (alterations and internal quotation omitted). But impacts on coworkers are relevant only to the

10

extent that they affect the employer's overall business, and coworker animosity to a religious practice cannot amount to an undue hardship.  *Id.* at 2296.

Finally, though the Court did not overrule *Hardison*, it limited the holding to seniority rights.  *Id.* at 2292 ("Its guidance on 'undue hardship' in situations not involving seniority rights is much less clear.").  The Court also advised that, "in all likelihood," no undue hardship is imposed by temporary payment of premium wages for a substitute, voluntary shift swapping, occasional shift swapping, or administrative costs involved in reworking schedules.  *Id.* at 2293, 2296.

Here, the University's College of Arts and Sciences had an Office for Policy Studies on Violence Against Women.  [R. 22-1 at 4.]  The Office focused on graduate student support, including helping with policy research and development and working with practitioners in the state.  [R. 22-2 at 5.]  The Office consisted of three employees: a director, a department manager, and a part-time researcher.  *Id.* at 9-10.  One other person also provided part-time support on a contract basis.  *Id.*  Thus, Ms. DeVore and the director were the only full-time employees in the Office.  *Id.*

Ms. DeVore, as the department manager, was to be the face of the Office.  [R. 22-2 at 19.]  The University's 2014 description for department managers stated that they manage the daily clerical and logistical tasks of their offices.  [R. 24-1 at 5.]  Department managers also serve as the "primary advocate" for faculty, students, and staff in navigating administrative needs.  *Id.*  Consequently, the description estimated daily interaction with faculty, staff, and students.  *Id.* at 8.  The University previously denied a request from Ms. DeVore to work from home two days a week unrelated to her religious beliefs because a "fundamental aspect of the Department Manager job is to be present in the department to welcome students and visitors,

11

support faculty, and answer questions as needed." [R. 22-5 at 2.] The University concluded that the position "requires a physical presence." *Id.* When Ms. DeVore left the Office, the University had a funding freeze for the program and another department manager was not hired. The Office was later eliminated. [R. 22-2 at 23-24.]

Because Ms. DeVore was the only administrative employee, the University could not accommodate her by shift-swapping or reworking schedules. *See Groff*, 143 S. Ct. at 2296. Ms. DeVore offered two ideas for accommodations: allowing her to work remotely full-time or hiring another employee. [R. 31 at 5-9.] The Court finds that these would cause the University an undue hardship.

The University previously estimated that department managers interact with faculty, staff, and students daily. [R. 24-1 at 8.] For this reason, a fundamental aspect of the job was to be physically present in the Office. [*See* R. 22-5.] So, allowing Ms. DeVore to work remotely would remove the Office's campus presence. These concerns even came to fruition. The Office's director later testified that the Office was hampered by not having a personal presence when Ms. DeVore left. [*See* R. 22-2 at 20.] Moreover, the accommodation would leave one of the Office's two employees not performing a function that the University deemed essential. Any reasonable jury would find that this would impose a substantial burden to the University's business. *See Groff*, 143 S. Ct. at 2294.

In addition, paying a part-time employee would create an undue hardship. Ms. DeVore offers an estimate of $5,000 for this accommodation, based on hiring an employee at a pay of ten dollars per hour for four hours a week and for nineteen weeks. [R. 31 at 8.] Each of these inputs is curious. Even given Ms. DeVore's salary estimate, four hours a week would not replace her forty-hour per week presence. And though the University changed its policy after nineteen

12

weeks, University officials at the time would have been hiring an extra employee for an indefinite period. Rather than a mere temporary payment of premium wages for a substitute, Ms. DeVore's second option would mean an indefinite payment of an entire salary for duplicative work. *See Groff*, 143 S. Ct. at 2293. Any reasonable jury would find that this too amounts to a substantial burden.

### III

Ms. DeVore fails to establish a prima facie case because she does not show that she held a sincere religious belief that conflicted with an employment requirement. Yet even if she could, the University established that accommodating her beliefs would cause it an undue hardship. Accordingly, and the Court being sufficiently advised, it is hereby **ORDERED** as follows:

1. Plaintiff Laurie Ann DeVore's Motion for Partial Summary Judgment [**R. 19**] is **DENIED**;

2. Defendant University of Kentucky Board of Trustees's Motion for Summary Judgment [**R. 22**] is **GRANTED**; and

3. An appropriate judgment will be entered herewith.

This the 18th day of September, 2023.

Gregory F. Van Tatenhove
United States District Judge